UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

CASE NO. 9:26-cv-80973-EA

LILLIAN HASSANEIN,

Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES,

Defendant.
_______________________________/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES[1](hereinafter named "FAU" or "the University"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12 and the Southern District of Florida Local Rules, hereby moves to dismiss Plaintiff's Amended Complaint, and states:

1. This is a purported discrimination and retaliation action arising from Plaintiff's dismissal as a student from FAU's College of Medicine. Plaintiff alleges seven counts against Defendant based on purported violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title IX, 20 U.S.C. § 1681 et seq.; and Florida Law. Count I alleges disability discrimination, failure to accommodate, and denial of equal access in violation of the ADA; Count II alleges disability discrimination, failure to accommodate, and denial of equal access in violation of the Rehabilitation Act; Count

[1] The Amended Complaint incorrectly names "Florida Atlantic University Board of Trustees" without the word "The" as a party consistent with §1001.72(1), Fla. Stat.

III alleges sex discrimination, sexual assault, and deliberate indifference pursuant to Title IX; Count IV alleges retaliation pursuant to Title IX; Count V is a retaliation claim in violation of the ADA; Count VI alleges retaliation in violation of the Rehabilitation Act; and Count VII alleges breach of contract under Florida contract law. The Amended Complaint remains substantively defective requiring dismissal on all Counts. Counts III and VII should be dismissed with prejudice.

2. Plaintiff's claims premised on discrete acts occurring before August 12, 2022, are barred by the four-year statute of limitations. *See Ware v. N. Fla. Reg'l Med. Ctr. Inc.*, 2023 WL 3466652, at *3 (N.D. Fla. Feb. 28, 2023), report and recommendation adopted, 2023 WL 3457877 (N.D. Fla. May 15, 2023); *Bigge v. Dist. School Bd. of Citrus County, Fla.,* 2015 WL 1138472 at *fn. 32 (M.D. Fla. 2015). The claims began to accrue at the time of the alleged discriminatory conduct pled and Plaintiff filed her Complaint several years late with respect to the majority of her allegations occurring from 2020 through 2022. To the extent Plaintiff's claims are premised on discrete acts occurring prior to August 12, 2022, they should be dismissed. *See Walker v. United States*, 196 F. App'x 774, 777 (11th Cir. 2006) (affirming claims were barred by statute of limitations because the "complaint [did] not reflect any set of facts that he could prove to satisfy the statute of limitations").

3. Specifically, the statute of limitations bars Plaintiff's Title IX claim in Count III in its entirety. All acts alleging sexual assault and stalking occurred prior to August 12, 2022 and FAU's subsequent investigation in 2025 of those acts did not extend the time period for Plaintiff to bring her claims.

4. Plaintiff's breach of contract claim also fails as a matter of law. Although "a student's relationship with his university is contractual in nature, it is an implied contract and not an express, written contract." *Williams v. Fla. State Univ.*, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014),

*aff'd sub nom. Williams v. Becker*, 608 F. App'x 905 (11th Cir. 2015). Implied contracts with the state are barred by sovereign immunity under Florida law. Plaintiff has failed to unequivocally show an express written contract to defeat FAU's entitlement to Eleventh Amendment immunity. *See Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5-6 (Fla. 1985). Accordingly, Plaintiff's breach of contract claim must be dismissed. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, 2019 WL 1411467, at *4 (M.D. Fla. Mar. 28, 2019).

5. Plaintiff fails to allege sufficient causal connection between any protected activity and any adverse action to support her retaliation claims in Counts IV, V, or VI. She identifies no decisionmaker with actual knowledge of her alleged protected activity and no facts plausibly linking that activity to her dismissal or any other adverse action.

6. Lastly, to the extent Plaintiff bases any claim on Defendant's alleged failure to prevent rumors allegedly spread by other students [ECF No. 9, ¶¶ 55-59, 67, 77, 92, 125], those allegations likewise fail to state a claim against the FAU. *See R.M.R. ex rel. P.A.L. v. Muscogee Cnty. Sch. Dist.*, 165 F.3d 812 (11th Cir. 1999) (School district could not be held liable under Title IX or § 1983 for failing to quell rumors that student helped create, to the effect that it was that student's report of sexual molestation by teacher that caused the teacher to resign, despite claim that the rumors and the district's failure to disclose that the teacher had confessed, created hostile environment for student, in violation of his civil rights).

## MEMORANDUM OF LAW

### *Dismissal Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."" Fed. R. Civ. P. 8(a)(2). This requirement gives the defendant fair notice, as well as the supporting grounds for the specific claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss

a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Id*.

Detailed factual allegations are not required to support the complaint, but the pleading obligation for a plaintiff "requires more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action. *Id*. at 555. The Rule 8 pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Ashcroft*, 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Id*. at 1224.

## I. PLAINTIFF'S CLAIMS ARE PREMISED ON DISCRETE ACTS THAT ARE BARRED BY THE STATUTE OF LIMITATIONS

Because Title IX, the ADA, and the Rehabilitation Act do not contain their own statute of limitations, courts borrow the applicable limitations period from the "most appropriate or analogous state statute of limitations." *Palmer ex rel. Palmer v. Santa Rosa Cnty., Fla., Sch. Bd.*, No. 3:05CV218/MCR, 2005 WL 3338724, at *3 (N.D. Fla. Dec. 8, 2005); *Gross v. Corizon Med.*, No. 4:18-CV-480-RH/MJF, 2019 WL 7861245, at *3 (N.D. Fla. Oct. 30, 2019), *report and recommendation adopted in part,* No. 4:18CV480-RH-MJF, 2020 WL 242418 (N.D. Fla. Jan. 16, 2020); *see also Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998). In Florida, the applicable limitations period is four years consistent with its personal injury claims. *Id*. Plaintiff

filed this action on August 12, 2026. [ECF No. 1]. Accordingly, any discrete discriminatory, retaliatory, or otherwise actionable act occurring before August 12, 2022 is time-barred and cannot serve as an independent basis for liability. Although Plaintiff characterizes earlier events as background allegations [ECF No. 9, ¶¶ 2, 15], certain claims in the Amended Complaint are clearly predicated on acts occurring outside the applicable statute of limitations.

Plaintiff's dismissal from the medical school, which she alleges occurred following the Medical Student Promotions and Professional Standards Committee ("MSPPSC") proceeding on April 13, 2026 [ECF No. 9, ¶ 116], does not revive claims based on earlier alleged discriminatory acts, retaliation, denial of equal access, failure to accommodate, breaches of confidentiality, and procedural irregularities. Recasting earlier time-barred conduct as the cause of a later adverse decision does not transform that conduct into a continuing violation, nor does it permit Plaintiff to circumvent the statute of limitations by characterizing time-barred acts as part of a later, timely decision.

The Eleventh Circuit has recognized that a discrimination claim generally accrues when the Plaintiff is informed of the discriminatory act. *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998). "The fact that any alleged consequences from those harms may have carried over into the future did not serve to extend the limitations period" or postpone accrual. *Garza v. Hudson*, 436 F. App'x 924, 926 (11th Cir. 2011). In *Bouazizi v. Hillsborough*, the plaintiff argued that her statute of limitations began to accrue when she "discovered that she suffered physical, mental, and psychological injuries". *Bouazizi v. Hillsborough Cnty.*, No. 8:19-CV-657-T-33TGW, 2019 WL 2247692, at *3 (M.D. Fla. May 24, 2019). The court held plaintiff's argument that the statute of limitations should begin to run in 2015 "when the permanent psychological and physical injuries from the discrimination became apparent" rather than the "time all the discriminatory acts

of which [plaintiff] was aware had occurred" was not supported by law. *Id*. It was clear that the plaintiff was aware of the alleged discrimination given her numerous EEOC complaints prior to her resignation in 2014; therefore, the statute of limitations deadline was sometime in 2018. *Id*. (finding Section 1983 claim filed in 2019 time barred and dismissing with prejudice).

Otherwise, a plaintiff could indefinitely extend the limitations period simply by alleging that a later adverse action was the consequence or culmination of earlier discriminatory conduct. Plaintiff's theory would effectively eliminate the statute of limitations altogether, because any time-barred discriminatory act could be repackaged as influence of a subsequent, timely employment or academic decision which is a result squarely foreclosed by precedent. The Court must reject Plaintiff's attempt to circumvent the applicable limitations period and dismiss any claims premised on discrete acts occurring before August 12, 2022.

***Title IX Claim in Count III Requires Dismissal Entirely***

Plaintiff cites paragraphs 6, 12, 14, 22, 27-43, 44-58, 64-66, 70-74, 84-87, 89-93, 96-100, and 104-107 in support of Count III, none of which alleges actionable conduct occurring within the applicable four-year statute of limitations – after August 12, 2022. [ECF No. 9, ¶ 154]. Despite filing an Amended Complaint, the pleading remains devoid of allegations supporting a Title IX sex discrimination claim within the limitations period. To the extent Plaintiff references conduct occurring within the limitations period, the conduct concerns loss of tuition, homelessness, evaluations and appeals of academic decisions, as well as a professionalism violation investigation initiated against Plaintiff by another student, none of which supports a Title IX claim. [ECF No. 9, ¶¶ 74, 85-86, 89-91, 93, 97]. Further, any allegations that Defendant failed to prevent the spread of rumors within the limitations period [ECF No. 9, ¶¶ 55-58, 65, 92] do not revive otherwise time barred conduct or independently establish an actionable Title IX claim. *See R.M.R. ex rel. P.A.L.*

*v. Muscogee Cnty. Sch. Dist.*, 165 F.3d 812 (11th Cir. 1999) (finding school district could not be held liable under Title IX for failing to quell rumors that student helped create, to the effect that it was that student's report of sexual molestation by teacher that caused the teacher to resign, despite claim that the rumors and the district's failure to disclose that the teacher had confessed, created hostile environment for student, in violation of his civil rights).[2] Instead, Plaintiff's Title IX claims are entirely premised on reports of harassment occurring in 2020 and 2021 – falling well outside the 4-year limitations period. [ECF No. 9, ¶¶ 17-24, 29-31, 33-42, 44-48, 51].

Plaintiff specifically alleges that in December 2021, she spoke with Dean Wood regarding the "lack of appropriate action concerning harassment, stalking, and Title IX violations" which the Dean allegedly characterized as not the University's responsibility. (*Id.* at ¶ 54). Thus, Plaintiff would have learned of the discriminatory act latest in December 2021, nearly 8 months outside the applicable limitations period. "As [Plaintiff] undoubtedly knew or had reason to know about the alleged unlawful treatment by the [Defendant] [as late as December 2021], the [Title IX] claim[s] are time-barred" and must be dismissed with prejudice. *Bouazizi v. Hillsborough Cnty.*, No. 8:19-CV-657-T-33TGW, 2019 WL 2247692, at *3 (M.D. Fla. May 24, 2019); *see also Hawk v. Pearson*, No. 1:09-CV-2968-TCB, 2010 WL 3724198, at *2 (N.D. Ga. Sept. 15, 2010) (finding plaintiff "was aware of the facts about which he complains at the moment he was stopped, as evident from his 911 call to report 'harassment and illegal stop[ ]"). Applying the same analysis as *Pearson*, Plaintiff became aware of the facts giving rise to her Title IX claims and the individuals allegedly responsible at the time she attempted to report the alleged bullying, sexual harassment,

---

[2] Plaintiff also alleges that, coincidentally on August 12, 2022, the date marking the beginning of the applicable statute of limitations period, she reported that a resident had called her disturbing names and slammed a chair against the wall. [ECF No. 9, ¶ 72]. However, Plaintiff does not allege that this conduct was motivated by her sex or is otherwise connected to sex-based discrimination. Thus, this allegation does not support a Title IX claim.

and stalking and did not file her complaint until over one year after the expiration of the four-year statute of limitations.

To the extent the Title IX claims are based on the fact that OCR conducted an investigation in 2025, and that she was not satisfied with the results, it does not extend or revive the limitations period as to these earlier, time-barred acts. The investigation revisited her 2020 and 2021 harassment and sexual assault reports. An OCR administrative investigation is not a prerequisite to filing a private Title IX action, does not toll the statute of limitations, and does not constitute a discrete act by Defendant giving rise to liability. *Palmer ex rel. Palmer v. Santa Rosa Cnty., Fla., Sch. Bd.*, No. 3:05CV218/MCR, 2005 WL 3338724, at *3, n. 5 (N.D. Fla. Dec. 8, 2005); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1557 at n. 5 (11th Cir. 1985); *Zamudio v. Haskins*, No. CV 1:17-5335-WSD-JSA, 2018 WL 3640606, at *3 (N.D. Ga. Apr. 19, 2018), *report and recommendation adopted sub nom. Zamudio v. Nurse*, No. 1:17-CV-5335-TWT, 2018 WL 3632439 (N.D. Ga. July 31, 2018), *aff'd sub nom. Zamudio v. Haskins*, 775 F. App'x 614 (11th Cir. 2019) (finding equitable tolling was not appropriate where lack of response to plaintiff's attempts to exhaust administrative remedies did not cause his late filing). A plaintiff cannot circumvent an expired limitations period by later requesting that a defendant re-examine time barred conduct. The alleged harassment, assault, and inadequate initial response – occurred and was known to plaintiff no later than December 2021. The alleged disclosure of Plaintiff's grades allegedly breaching confidentiality is also time barred as Plaintiff alleges it occurred in June 2021. [ECF No. 9, ¶¶ 43, 57]. Accordingly, Count III should be dismissed with prejudice.

## II. <u>**FAU, AS AN ARM OF THE STATE, IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY ON BREACH OF CONTRACT CLAIM GIVEN ABSENCE OF EXPRESS WRITTEN CONTRACT**</u>

Plaintiff's breach of contract claim in Count VII also fails as a matter of law. It is undisputed that FAU is an arm of the state for Eleventh Amendment immunity purposes. *See Gould v. Fla. Atl. Univ. Bd. of Trs.*, 2011 WL 13227759, at *2. An implied waiver of sovereign immunity only exists for express, written contracts. *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5-6 (Fla. 1985). "While a student's relationship with his university is contractual in nature, it is an implied contract and not an express, written contract." *Williams v. Fla. State Univ.*, No. 4:11-CV-350-MW/CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014), *aff'd sub nom. Williams v. Becker*, 608 F. App'x 905 (11th Cir. 2015) (granting summary judgment in public university's favor because "sovereign immunity has not been waived from suits alleging the breach of an implied, unwritten contract"); *see also McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149, 1172 (S.D. Fla. 2021), *aff'd*, No. 21-11453, 2022 WL 1203080 (11th Cir. Apr. 22, 2022) (finding plaintiff failed to assert the existence of an express written contract given status as a student was not sufficient). Unless there is an express written contract formed by the parties, FAU is shielded by sovereign immunity. *See Carr v. Bd. of Regents of Univ. System of Georgia*, 249 Fed. Appx. 146, 151 (11th Cir. 2007) (holding that an undergraduate catalog did not constitute a binding written contract upon which the university could be bound and subject to suit).

Although Plaintiff conclusorily alleges the existence of an express written contract between her and FAU [ECF No. 9, ¶¶ 184-185], she identifies no specific express written agreement or contractual provision requiring FAU to provide any particular service as an exchange for the fees to support her assertion. *See generally*, ECF No. 9. Instead, the Amended Complaint relies on Plaintiff's "enrollment, payment of tuition and fees, acceptance of academic requirements, Defendant's publications, policies, handbooks, procedures, accommodation processes, anti-discrimination policies, student mistreatment policies, professionalism standards, and related

written materials" and the College of Medicine Student Handbook. [ECF No. 9, ¶¶ 184-186]. Florida courts have repeatedly recognized that such allegations are insufficient to establish an enforceable express contract to defeat immunity.

For example, Florida courts have held that financial obligations and liability agreements do not constitute an express written contract for purposes of defeating sovereign immunity. *See Dist. Bd. of Trustees of Miami Dade Coll. v. Verdini*, 339 So. 3d 413, 416 (Fla. 3d DCA 2022), *reh'g denied* (June 15, 2022) (remanding with instruction to dismiss complaint due to lack of an express written contract); *Fla. Int'l Univ. Bd. of Trustees v. Alexandre*, 365 So. 3d 436, 438 (Fla. 3d DCA 2023) (finding the complaint incorporated no documents containing express terms requiring university to provide on-campus or in-person services as an exchange for fees and remanding for entry of an order of dismissal); *Heine v. Fla. Atl. Univ. Bd. of Trustees*, 360 So. 3d 412, 415 (Fla. 4th DCA 2023); *Univ. of Fla. Bd. of Trustees v. Rojas*, 351 So. 3d 1167 (Fla. 1st DCA 2022), *reh'g denied* (Dec. 27, 2022), *review granted*, No. SC2023-0126, 2023 WL 4784215 (Fla. July 27, 2023); *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (finding implied contract where student knows and will conform to the rules and regulations of the institution and pay fees for services and the university provides an educational experience designed to lead to a degree); *see also Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021) ("The terms of a student's contract with the university may be derived from university publications such as the student handbook and catalog. Such publications are terms of an implied-in-fact contract rather than an express contract." (quotations and citations omitted)). Plaintiff cannot defeat sovereign immunity based on a contract derived from implied conditions and obligations of university policies. *See Brown v. Fla. Gulf Coast Univ. Bd. of Trustees*, No.

218CV157FTM29MRM, 2018 WL 5971661, at *9, n.6 (M.D. Fla. Nov. 14, 2018) (dismissing breach of contract claim where contract was based on university's student code of conduct).

Accordingly, Plaintiff's breach of contract claim must be dismissed with prejudice. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:18-CV-2651-T-33SPF, 2019 WL 1411467, at *4 (M.D. Fla. Mar. 28, 2019) (dismissing breach of contract claim against public university because it was barred by both Eleventh Amendment immunity and Florida's sovereign immunity); *Lafleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832, at *5 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3725243 (M.D. Fla. Aug. 23, 2021) (dismissing breach of contract claim based on sovereign immunity); *Heine v. Fla. Atl. Univ. Bd. of Trustees*, 360 So. 3d 412, 415 (Fla. 4th DCA 2023).

## III. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS IN COUNTS I AND II MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

To state a *prima facie* claim for failure to accommodate, Plaintiff "must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

The Eleventh Circuit has repeatedly held that, "[i]n the context of postsecondary education, an 'otherwise qualified' individual must be able to meet the academic and technical standards requisite to admission or participation in the education program or activity, in spite of his handicap." *J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) and 34 C.F.R. § 104.3(l)(3)). There is "no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Goldberg v. Florida Int'l Univ.*

*Bd. of Trustees*, 18-20813-CIV, 2020 WL 1815360, at *5 (S.D. Fla. Apr. 10, 2020) *citing J.A.M.*, 646 Fed. Appx. at 926. Where the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make "major adjustments" to its program does not amount to disability-based discrimination. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 F. App'x 776, 782 (11th Cir. 2018).

"The Eleventh Circuit has determined that the ADA entitles a qualified individual who suffers from a disability to reasonable accommodations, but not necessarily accommodations of the individual's choice." *See Ramos v. Univ. of Miami*, No. 21-CV-22151, 2021 WL 4949160, at *4 (S.D. Fla. Oct. 25, 2021) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997)). "As such, Defendant's partial denial of Plaintiff's accommodation of choice alone is not a sufficient allegation of unreasonable accommodations." *Id.* (granting dismissal where partial denial of accommodations was insufficient to establish discrimination on account of plaintiff's disability). Moreover, the Plaintiff bears the burden of identifying an accommodation. *Bagwell v. Morgan Cty. Comm'n,* 676 F. App'x 863, 865 (11th Cir. 2017). The "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363-64 (11th Cir. 1999).

Yet Plaintiff fails to allege the circumstances surrounding each requested accommodation, including whether the request was related to her alleged disability, when and to whom the request was made, and what accommodation was requested. (*See* ECF No. 9, ¶¶ 14, 86-87, 131, 135-136, 147-148). For example, Plaintiff alleges that she requested to be separated from her alleged stalker **for safety reasons**, not because of any disability, and delays for exams as well as submitting assignments, and does not identify when or to whom the requests were made. [ECF No. 9, ¶¶ 65,

86]. Moreover, Plaintiff acknowledges that she was provided accommodations but conclusorily alleges that they were insufficient. [ECF No. 9, ¶¶ 61, 86, 89, 131, 133, 145].

In *Forbes v. St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012), the plaintiff argued that she was entitled to a private examination room. However, she failed to provide any information that her alleged disability required a private room and she did not complain about taking her examinations in a room with other classmates and a proctor. *See id*. The Court ruled that that the University accommodated Plaintiff's alleged disability and that those accommodations were reasonable. *See id*. at 811. Similar to *Forbes*, here, the Amended Complaint alleges that the University provided Plaintiff with testing accommodations during certain instances in which she successfully passed exams and was granted multiple leaves of absence.

Arguably, the only accommodation requests that Plaintiff specifically alleges were denied related to her disability within the applicable limitations period are her 2024 through 2025 requests for leave, withdrawal, and retroactive withdrawal. [ECF No. 9, ¶¶ 80, 90, 98-99, 135, 147]. However, absent from the Amended Complaint is any explanation how the requested "accommodations" would allow Plaintiff to meet the essential requirements of the medical school program at FAU. *See Butler v. Kijakazi*, 2021 WL 6052274, at *3 (M.D. Fla. Dec. 21, 2021) (stating that plaintiff was required to allege that he had a disability necessitating an accommodation and that the accommodation would have allowed him to do his job). For example, although the Amended Complaint references the loss of tuition and the University's refund policy [ECF No. 9, ¶¶ 50, 93-97], Plaintiff fails to explain how reimbursement would accommodate her disability or otherwise enable her to meet the medical school's requirements. Moreover, Plaintiff had already requested and received leave [ECF No. 9, ¶ 60], yet **continued to perform poorly**. The Amended Complaint does not explain how retroactive withdrawal or additional leave, even if available, or

any other accommodation, would have enabled Plaintiff to meet the medical school's requirements in light of the symptoms she alleges persisted from 2024 through 2026 – i.e. her limited ability to concentrate, learn, sleep, prepare for and complete examinations, participate or perform in clinical rotations, and crying during shelf examinations. [ECF No. 9, ¶ 13].

In *Butler*, the court dismissed plaintiff's complaint because he failed to allege that he had a diagnosed disability that necessitated a particular reasonable accommodation request or that the accommodation would have allowed him to do his job; he also failed to connect that accommodation request to a medical condition. *Id*. For these reasons, Counts I and II do not state a cognizable cause of action under the ADA or the Rehabilitation Act.

## IV. RETALIATION CLAIMS UNDER COUNTS IV, V, AND VI FAIL FOR LACK OF CAUSATION

Notably, the "Rehabilitation Act incorporates ADA antiretaliation provision, which is similar to Title VII's prohibition on retaliation" and thus, courts assess such claim under the same framework. *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243 (11th Cir. 2011). "To establish a *prima facie* case for retaliation under the ADA, a plaintiff must show that (1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse ... action; and (3) the adverse action was causally related to the protected expression." *Atchison v. Bd. of Regents of Univ. Sys. of Georgia*, 802 F. App'x 495, 503 (11th Cir. 2020). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity." *Sicilia v. United Parcel Serv., Inc.*, 279 F. App'x 936, 939 (11th Cir. 2008); *Flemings v. U.S. Sec. Assocs., Inc.*, No. 18-24861-CIV, 2020 WL 1503638, at *9 (S.D. Fla. Mar. 4, 2020), *report and recommendation adopted*, No. 18-24861-CIV, 2020 WL 1493468 (S.D. Fla. Mar. 27, 2020).

Plaintiff fails to plausibly connect any alleged protected activity – including her 2025 Title IX investigation or any purported requests for accommodation – to an adverse action such as her dismissal in 2026 from the College of Medicine. In particular, Plaintiff does not identify any decisionmaker with respect to her dismissal – i.e. individual member of the committee or appeal panel - who had actual knowledge of her protected activity, does not allege facts establishing that the decisionmaker acted because of that activity, and does not allege any other substantive link between any specific accommodation request and any adverse action. [ECF No. 9, ¶¶ 114-116, 141, 151, 167, 181]. Her conclusory allegation that "each identified decisionmaker received or had access to Plaintiff's reports, accommodation requests, disability-based appeals," etc. does not establish that any decisionmaker actually knew of her alleged protected activity or that the challenged decisions were causally related to it. *Id*. Nor does Plaintiff allege any facts establishing temporal proximity between the protected activity and any alleged adverse action sufficient to support a reasonable inference of causation. Absent factual allegations connecting a decisionmaker's knowledge of protected activity to the challenged adverse action, Plaintiff's retaliation claims rest on nothing more than speculation and conclusory assertions of causation.

"Having failed to allege facts demonstrating that the decision maker(s) knew of Plaintiff's protected activity at the time of the allegedly adverse employment actions, []he has not plausibly stated a claim for retaliation." *Flemings*, 2020 WL 1503638 at *9 (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (no causal connection where "[t]here ... is no evidence in the record to support a finding that [the decision makers] knew of any [protected activity] at the time the decision was made to terminate [the plaintiff's] employment.")); *see also O'Hara v. Univ. of W. Fla.*, 750 F. Supp. 2d 1287, 1312 (N.D. Fla. 2010) (finding that plaintiff's failure to provide information regarding the dates of her complaints was "potentially fatal to her retaliation claim"

brought under Title VII). Accordingly, the retaliation claims in Counts IV, V, and VI warrant dismissal.

***Plaintiff Failed to Plausibly Allege But-For Causation***

Importantly, retaliation claims must be established through "traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). In other words, Plaintiff is required to plausibly allege that her protected activity was the "but-for" cause of the alleged adverse action. *See id.* at 1534; *see also Collins v. Department of Children and Families,* 2019 WL 5784679, at *2 (S.D. Fla. 2019). Plaintiff's conclusory allegations are not sufficient to demonstrate the requisite but-for causation. *See Collins,* 2019 WL 5784679, at *2 (finding allegation merely stating that plaintiff complained and was retaliated against insufficient to establish but-for causation) (dismissing retaliation complaint where plaintiff failed to specifically plead but-for causation); *see also Hopkins v. Saint Lucie County School Bd.,* 399 Fed. Appx. 563 (11th Cir. 2010) (affirming dismissal of retaliation claim where complaint lacked allegations demonstrating causal connection between protected activity and termination).

Measured against these standards, the Amended Complaint's own chronology of events defeats the inference of but-for causation rather than supporting it. For example, the August 2024 promotions committee hearings arise from a professionalism proceeding initiated against Plaintiff by another student that began in July 2024 which began before any alleged protected activity. [ECF No. 9, ¶¶ 69-70, 74-75, 78, 77, 72, 80, 82]. An action set in motion before the protected activity cannot have been caused by it. *See Lakehal v. Fla. Int'l Univ. Bd. of Trs.*, No. 23-20377-CV, 2023 WL 12172033, at *4 (S.D. Fla. June 27, 2023). The ensuing "unsatisfactory" or negative ratings

are not plausibly a product of the September 17, 2024 leave request or any other alleged protected activity because Plaintiff fails to allege that the individuals who issued the evaluations had knowledge of any protected activity. [ECF No. 9, ¶¶ 83, 85-86]. In fact, Plaintiff alleges that one attending held a negative opinion of Plaintiff "because of repeated educational disturbances" and that she received "unsatisfactory" ratings "based on performance on a written exam that she had not had time to prepare for due to frequent disruptions and distress from discrimination." *Id*. The appeals and the OCR investigation beginning in the Spring of 2025, occurred roughly one year before the April 2026 dismissal, far outside the "very close" temporal proximity window. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). The conclusory assertions that "[b]ut for Plaintiff's protected activity she would not have been subjected to the adverse . . . actions" [ECF No. 9, ¶¶ 165, 179, 172] are threadbare recitals entitled to no weight. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Even if there were a sufficiently close temporal connection, which there is not, causal connection is severed by an intervening act, such as misconduct, or an intervening event that independently justified adverse disciplinary action. *See Chunxue Wang v. Fla. Atl. Univ. Bd. of Trs.*, 2018 WL 3241359, at *15 (S.D. Fla. Mar. 8, 2018). Here, the July 2024 professionalism violation and the November 2024 "Unsatisfactory" ratings in three (3) rotations intervened before the challenged outcomes. [ECF No. 9, ¶¶ 69, 85]. Independent, pre-existing grounds, such as Plaintiff's academic performance, likewise defeat causation. Where a decisionmaker contemplates the adverse action before the protected activity, proximity "does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *Lakehal v. Fla. Int'l Univ. Bd. of Trs.*, 2023 WL 12172033, at *4 (S.D. Fla. June 27, 2023) (dismissing retaliation claims for failure to sufficiently allege causation given contemplation of adverse employment action before employee

engaged in protected activity). Here, Plaintiff failed Neurology in 2021, fell years behind her cohort, and, by her own pleading, "the dismissal decision relied on academic deficiencies, professionalism proceedings, disputed evaluations, and unsatisfactory rotation outcomes" that undermine any plausible inference that the decision would not have occurred absent the alleged protected activity. [ECF No. 9, ¶¶ 44, 80, 115]. Accordingly, Counts IV, V, and VI warrant dismissal.

WHEREFORE, Defendant, THE FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES, respectfully requests that the Court grant the Motion to Dismiss the Amended Complaint, dismiss Count III with prejudice as barred by the applicable statute of limitations, dismiss Count VII with prejudice based on Defendant's immunity from breach of contract claims, and dismiss the remaining Counts (I, II, IV, V, and VI) for pleading deficiencies, with leave to amend as the Court considers appropriate, and any other relief the Court deems appropriate.

WE HEREBY CERTIFY that on this 26th day of October, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

WYDLER LAW
*Counsel for Defendant FAU*
1550 Madruga Avenue
Suite 400
Coral Gables, FL 33146
(305) 446-5528
(786) 422-1373 (fax)

BY: /s/ Lourdes Espino Wydler
LOURDES ESPINO WYDLER
F.B.N.: 719811
lew@wydlerlaw.com
LAUREN D. MARTIN
F.B.N.: 1034166
ldm@wydlerlaw.com
Secondary email:
guertty@wydlerlaw.com

**SERVICE LIST**

Stewart Lee Karlin, Esquire
Florida Bar No. 961159
Stewart Lee Karlin Law Group PC
2005 W. Cypress Creek Road, Suite 104B
Fort Lauderdale, FL 33309
and
111 John Street, 22nd Floor
New York, NY 10038
Office: (212) 792-9670
Fax: (212) 732-4443
slk@stewartkarlin.com
***Counsel for Plaintiff***